**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles THOMAS, Defendant–**
**Appellant.**

No. 02–10409.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Filed Jan. 26, 2004.

Daniel P. Blank, Assistant Federal Public Defender, San Francisco, CA, for the defendant-appellant.

Michael Wang, Assistant United States Attorney, San Francisco, CA, for the plaintiff-appellee.

Before HUG, B. FLETCHER, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

Charles Thomas appeals his 120–month sentence following his guilty plea conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Thomas was sentenced to the statutory minimum sentence provided by 21 U.S.C. § 841(b)(1)(A) because his indictment charged that he possessed with the intent to distribute "more than 50 grams of cocaine base." He argues on appeal that, although he pleaded guilty, he never admitted to that quantity of drugs, and in fact repeatedly sought to preserve his right to contest that fact. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we vacate and remand for resentencing.

## BACKGROUND

On October 29, 2001, San Francisco police officers stopped a car in which Charles Thomas was a passenger. When the car pulled over, Thomas got out of the vehicle and started to flee. As officers pursued Thomas on foot, he stumbled and dropped a clear plastic bag. The bag contained three plastic bags, each of which contained what appeared to be a rock of crack cocaine. A police laboratory report indicated that Thomas had 77.86 grams of cocaine base in his possession.

Thomas was indicted on one count of violating 21 U.S.C. § 841(a)(1). The indictment alleged that Thomas possessed with intent to distribute more than 50 grams of cocaine base. On February 26, 2002, Thomas filed a motion with the district court for an advisement on the elements of the charge, pursuant to the version of Federal Rule of Criminal Procedure 11(c) then in effect. In the motion, Thomas stated that he wished to

plead guilty to the sole charge of the indictment, but he was not prepared to admit to possessing any particular quantity of cocaine base. Thomas interpreted this Court's recently decided en banc decision in *United States v. Buckland*, 289 F.3d 558 (9th Cir.), *cert. denied*, 535 U.S. 1105, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002), as holding that drug type and quantity are not elements of the charged offense, but rather are penalty provisions with heightened due process requirements. Thomas argued that he should therefore be able to plead guilty without admitting the drug type and quantity allegations, which the government would then need to prove beyond a reasonable doubt to a jury at sentencing.

The government opposed Thomas' motion for an advisement. The government argued that neither drug type nor drug quantity is an element of a charge under 21 U.S.C. § 841. Rather, the government acknowledged that drug type and quantity are sentencing factors that must be proved beyond a reasonable doubt. Nevertheless, the government argued, Thomas must plead guilty to all facts to which he would be entitled to a jury determination, whether they be labeled elements or sentencing factors. The government also argued that a defendant cannot enter an open plea to a charge that differs from the one returned by the grand jury, and here the indictment specifically alleged that Thomas possessed more than 50 grams of cocaine base.

The district court granted Thomas' motion in part, advising him that type and quantity of drugs are not elements of the offense but rather are material facts or sentencing factors. The district court judge also denied the motion in part, ruling that she would not allow Thomas to plead guilty unless he admitted all of the allegations in the indictment, including type and quantity allegations. The district court judge admitted that Thomas' motion

raised novel questions to which she did not have answers. In her view, however, because *Buckland* requires that drug type and quantity be pleaded and proved to a jury, a defendant cannot enter a guilty plea without admitting those facts. Thomas requested that the district court set the matter for a jury trial.

Thomas then moved for reconsideration. In the same motion, he informed the district court that he no longer wished to proceed to trial and intended to plead guilty. He explained that he was changing his plea because the government had indicated that it might seek to invoke the sentencing enhancement provisions of 21 U.S.C. § 851 if he proceeded to trial.

At a change of plea hearing, before accepting the change of plea, the district court denied Thomas' motion for reconsideration. The district court based its decision in part on *United States v. Benson*, 579 F.2d 508 (9th Cir.1978), which it read as holding that a guilty plea conclusively establishes all material facts in the indictment. The district court informed Thomas of the charges in the indictment, including the allegation that he possessed more than 50 grams of cocaine base. The government then made a factual proffer, including that the bag Thomas dropped contained more than 50 grams of crack cocaine. The government also described the elements of the offense:

[Prosecutor]: The elements of the offense are that the defendant knowingly and intentionally with the intent to distribute or dispense a controlled Schedule II controlled substance, and that is more than fifty grams of cocaine base—and I realize that [Thomas' counsel]—there's a distinction that he draws between elements of the offense and what's charged in the indictment. The actual elements under 841(a)(1) are that the defendant knowingly and intentionally possessed

with the intent to distribute a Schedule II controlled substance.

\* \* \*

We have further alleged in the indictment material facts which are sentencing factors under *Apprendi,* but those would include that the substance was more than fifty grams of cocaine.

After advising Thomas of the consequences of a guilty plea, the district court asked Thomas if he "disagree[d] with the proffer made by [the prosecutor] as to what happened as to the facts of the case?" Thomas replied "Yes." He went on to explain that "[w]hat she [the prosecutor] said is right. But so far as me knowing, I didn't have no ability what was in there. I knew—I assumed it was something, but as far as how much it weighed or anything I knew nothing about it." The district court accepted the plea and adjudged Thomas guilty of the offense.

Thomas then requested an evidentiary hearing to determine the applicable quantity of cocaine base found in his possession. Thomas questioned whether the drug quantity listed in the Presentence Investigation Report ("PSR") was the net weight or the gross weight and requested an opportunity to cross-examine the police criminalist who had prepared the laboratory report. He also reasserted his right to have drug quantity determined by a jury beyond a reasonable doubt. At the sentencing hearing, the district court denied Thomas' requests on the ground that he had already pleaded guilty to the allegation in the indictment that he possessed more than 50 grams of cocaine base. The court sentenced Thomas to 120 months' imprisonment and five years' supervised release.

## STANDARD OF REVIEW

A district court's construction or interpretation of a statute is reviewed de novo. *United States v. Cabaccang,* 332 F.3d 622,

624–25 (9th Cir.2003) (en banc). A district court's compliance with Federal Rule of Criminal Procedure 32 is also reviewed de novo. *United States v. Carter,* 219 F.3d 863, 866 (9th Cir.2000).

## ANALYSIS

### I. Thomas Did Not Admit the Drug Quantity Allegation in the Indictment

A. *Drug Quantity Is Not an Element Under 21 U.S.C. § 841*

■ Once again, we are called upon to address the penalty provisions of 21 U.S.C. § 841(b). The basic question we must decide is whether the requirement of due process that drug quantity be pleaded in the indictment, submitted to a jury, and proved beyond a reasonable doubt transforms drug quantity into an element of the offense that a defendant necessarily admits when pleading guilty.

In *Buckland,* we considered whether the penalty provisions of § 841(b) were facially unconstitutional in light of the Supreme Court's holding that " 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Buckland,* 289 F.3d at 562 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). Although both the statutory text and the uniform practice among the circuits suggested that the provisions of § 841(b) were sentencing factors which a judge would decide by a preponderance of the evidence, we upheld the constitutionality of the statute. *Id.* at 572. We did so "by treating drug quantity and type, which fix the maximum sentence for a conviction, as we would any other material fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and

proved beyond a reasonable doubt." *Id.* at 568.

*Buckland* is not altogether clear about whether the penalty provisions of § 841(b) are elements of an aggravated offense or are sentencing factors with heightened due process requirements. In fact, we rejected the distinction altogether, stating that "[t]he days of semantical hair splitting between 'elements of the offense' and 'sentencing factors' are over" and overruling case law to the contrary. *Id.* at 566 (citation omitted). Yet, if material facts such as drug quantity function as elements by increasing the maximum penalty a defendant may receive, are they elements of an aggravated offense or are they sentencing factors with heightened due process requirements? *See id.* at 573, 575 (Hug, J., concurring) (disagreeing with the majority's apparent conclusion that the penalty provisions of § 841(b) are not elements of the offense).

The district court correctly interpreted *Buckland* as holding that drug type and quantity are not elements of the offense, but rather are material facts that must be submitted to the jury and proved beyond a reasonable doubt. The *Buckland* opinion emphasized that the relevant inquiry is not whether a penalty provision is an element, but rather whether it exposes the defendant to a longer sentence than would be authorized by the jury's guilty verdict. *Id.* at 566. In addition, we pointed out that " 'a penalty enhancement provision' which is not an element of the crime charged, specifically 21 U.S.C. § 841(b)(6), can be included in an indictment and submitted to a jury for a decision as to the existence of the facts that make the enhancement applicable at sentencing." *Id.; see also id.* at 573 (Hug, J., concurring) (observing that the majority opinion "appears to conclude that these sections fall into a new category denominated 'sentencing factors' that must be charged in the indictment and proved to a jury beyond a reasonable doubt, but are not elements of aggravated crimes").

Our later decisions confirm this reading of *Buckland*. *See United States v. Toliver*, 351 F.3d 423, 430 (9th Cir.2003) (holding that drug type and quantity "do not constitute formal elements of separate and distinct offenses under section 841(b)(1)"); *United States v. Valensia*, 299 F.3d 1068, 1074 (9th Cir.2002) (holding that "[b]ased on *Buckland*, we must reject Valensia's contention that the sentencing provisions of § 841 create separate crimes"); *United States v. Minore*, 292 F.3d 1109, 1116–17 (9th Cir.2002) (holding that for purposes of advising a defendant of the elements of a charge during a plea colloquy, drug quantity is the functional equivalent of a critical element, even though "[a]dmittedly ... a finding of drug quantity is not necessary to convict [a defendant] of violating § [ ] 841(a)"), *cert. denied*, 537 U.S. 1146, 123 S.Ct. 948, 154 L.Ed.2d 848 (2003); *see also Summerlin v. Stewart*, 341 F.3d 1082, 1101 n. 7 (9th Cir.2003) (en banc) (noting in dicta that, in *Buckland*, the court "concluded that *Apprendi* did not alter, restructure, or redefine as a matter of New Jersey law the substantive elements of the underlying offense there at issue, nor did it create or resurrect a separate substantive offense ... [and] did not demand that we do so when assessing 'type and quantity' evidence under § 841"), *petition for cert. granted sub nom. Schriro v. Summerlin*, —— U.S. ——, 124 S.Ct. 833, 157 L.Ed.2d 692 (2003) (No. 03–526).

**B.** *Thomas' Plea Did Not Necessarily Admit the Drug Quantity Allegation Contained in the Indictment*

 As drug type and quantity are not elements of the offense under § 841, the next question is whether the district court erred by ruling that Thomas's guilty plea encompassed not only the elements of the

offense but material facts that the government would otherwise have had to submit to a jury and prove beyond a reasonable doubt.

The core of the disagreement between Thomas and the government is whether, in the absence of an explicit admission at the plea colloquy, a guilty plea encompasses only the elements of the offense or also all material facts alleged in the indictment. Thomas argues that by pleading guilty he voluntarily admitted all elements of the offense, but he did not admit allegations that did not rise to the level of elements.

In *United States v. Cazares*, 121 F.3d 1241, 1246 (9th Cir.1997), we considered whether a guilty plea to a drug conspiracy charge under 21 U.S.C. § 846 admits conduct alleged as an overt act. We noted that it has long been settled that a guilty plea is an admission of the formal elements of a criminal charge. *Id.* (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). By pleading guilty, a defendant admits " 'all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.' " *Id.* (quoting *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)). It was an issue of first impression, however, whether a guilty plea also comprehends factual allegations that are not elements of the offense. *Id.*

After a review of our decisions, *Cazares* held that "allegations not necessary to be proved for a conviction—in this case overt acts—are not admitted by a plea." *Id.* at 1247. We reasoned that it would be inconsistent to give a guilty plea greater weight than a conviction for the same offense

after a jury trial. *Id.* In addition, treating a guilty plea as encompassing facts not essential to conviction would undercut the prophylactic purposes of Federal Rule of Criminal Procedure 11, because the court would not necessarily satisfy itself that there was a factual basis for such allegations. *Id.*

The government responds by quoting our decision in *Benson* that "a defendant's plea of guilty conclusively admits all factual allegations of the indictment." 579 F.2d at 509. *Benson*, however, sheds little light on Thomas' claim because the issue in that case was whether the defendant admitted an *element* of the offense. *See id.* ("Benson asks us . . . to determine whether one of the requisite elements of the offense was satisfied. His guilty plea, however, requires us to decline to do so.").[1]

Next, the government argues that a defendant cannot enter an open plea to a charge that differs from the one returned by the grand jury, because this "would allow every criminal defendant to reshape the charges against him by pleading to only certain elements or facts while ignoring others." This concern would be valid if Judge Hug's concurrence in *Buckland* had carried the day and the penalty provisions of § 841(b) were elements of separate aggravated offenses. *See Buckland*, 289 F.3d at 573–74 (Hug, J., concurring) (interpreting § 841(a) as setting forth the basic offense and § 841(b) as setting forth specific drug quantities as elements of two aggravated offenses). In that scenario, Thomas surely would not be allowed to enter an open plea to a lesser included offense (§ 841(a) standing alone) if the grand jury had indicted him for an aggra-

---

1. The government also cites *United States v. Davis*, 452 F.2d 577 (9th Cir.1971), for the same proposition. In *Davis*, however, a defendant who had pleaded guilty to bank robbery was challenging whether the bank was FDIC-insured, which is a jurisdictional element of the offense. *See* 18 U.S.C. § 2113(f) (1968) (defining "bank" as "any bank the deposits of which are insured by the Federal Deposit Insurance Corporation"); *see also* Ninth Circuit Manual of Model Jury Instructions, Criminal, Instruction 8.131 (2000).

vated offense (§ 841(a) in conjunction with § 841(b)(1)(A)). Indeed, the only on-point case the government cites pertains to lesser included offenses. *See United States v. Edmonson,* 792 F.2d 1492, 1498–99 (9th Cir.1986) (noting that "a district court in accepting a guilty plea to the indictment, may not, without the government's consent, accept a plea to a lesser included offense").[2]

The government also argues that Thomas' reliance on *Cazares* is misplaced, because the Ninth Circuit has held that Federal Rule of Criminal Procedure 11 requires the district court "to establish the quantity of the controlled substance involved as part of the factual basis for the plea." *Valensia,* 299 F.3d at 1076. This requirement would satisfy the second of the concerns that the court enunciated in *Cazares,* regarding the prophylactic purposes of Rule 11. *See Cazares,* 121 F.3d at 1247. Yet here, the district court proceedings illustrate why the *Cazares* court was concerned that, if a guilty plea encompassed factual allegations as well as elements, the judge would not satisfy himself or herself that there was a factual basis for such allegations. *Id.* As we discuss in Part I.C, below, the district court accepted Thomas' plea even though he was never asked to admit and never admitted the quantity of drugs alleged in the indictment. The district court instead relied on the guilty plea itself to establish the drug quantity allegation in the indictment.

Finally, the government contends that *Cazares* is no longer relevant in light of *Apprendi* and *Buckland.* That is, defendants have a due process right to be adequately informed of allegations that could increase their sentence beyond the statutory maximum and to have those allegations submitted to a jury upon proof beyond a reasonable doubt, *see Buckland,* 289 F.3d at 568, and therefore a guilty plea encompasses these allegations. In *Minore,* we held that "where drug quantity exposes the defendant to a higher statutory maximum sentence than he would otherwise receive, it is the functional equivalent of a critical element . . . [and] Rule 11(c)(1) and due process require the district court to advise the defendant of each critical element of the offense." 292 F.3d at 1117. For this reason, "the district court must advise the defendant that the government would have to prove drug quantity as it would prove any element—to the jury beyond a reasonable doubt." *Id.*

■ Nevertheless, a defendant's due process *right* to be advised of the burden of proof for drug quantity does not translate into an *admission* of drug quantity when pleading guilty. *See Toliver,* 351 F.3d at 430 ("[A]ttaching the label 'element' to a fact that may increase the maximum statutory sentence only has significance for purposes of satisfying the due process rights established by *Apprendi.*"). Indeed, "while we may label a fact as the 'functional equivalent of an element' for purposes of *Apprendi,* that does not trans-

---

**2.** Of the other two cases cited by the government in support of its position that Thomas would be reshaping the charges by pleading guilty to the elements of the offense but not to the quantity allegations, the first is not on point and the second does not support the government's position. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), dealt with a *defendant's* right "to be tried only on charges presented in an indictment returned by a grand jury." *Id.* at 217, 80 S.Ct. 270. *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), explicitly rejected the proposition that a court may not convict a defendant after "drop[ping] from an indictment those [factual] allegations that are unnecessary to an offense that is clearly contained within it. . . ." *Id.* at 144, 105 S.Ct. 1811.

form the fact into an offense 'element' for purposes of *Winship.*" *Id.* Thus, even where due process requires that a drug quantity allegation be pleaded in the indictment and proved to a jury beyond a reasonable doubt, a defendant can plead guilty to the elements of the offense without admitting the drug quantity allegation.

Had this case gone to trial, the government would have been required to prove beyond a reasonable doubt that Thomas possessed at least 50 grams of cocaine base in order for the penalties in § 841(b)(1)(A) to apply. This jury determination, however, would have been relevant to sentencing, not to guilt. *See Buckland,* 289 F.3d at 568 (holding that Congress' intent in § 841(b) was to "ramp up the punishment" based on the type and amount of drug involved in the offense); *id.* at 566 (noting that a penalty enhancement provision such as § 841(b)(6), "which is not an element of the crime charged," may be submitted to a jury for purposes of sentencing). We hold, therefore, that under *Cazares,* the district court erred in ruling that Thomas's guilty plea necessarily admitted the drug quantity allegation in the indictment.

### C. *Thomas Did Not Admit to Possessing 50 Grams of Cocaine Base During His Plea Colloquy*

Even though Thomas' plea did not encompass the quantity allegation in the indictment, we must determine whether Thomas in fact admitted to possessing more than 50 grams of cocaine base during his plea colloquy. At the hearing on Thomas' motion for an advisement on the elements of the charge, the district court judge advised him that "the sentencing factors, type and quantity, are not elements" but that she would "not accept a plea of guilty that does not contain all of the allegations, that does not direct the allegation in the indictment, which in this case includes type and quantity."

At the hearing on the change of plea, however, Thomas' counsel informed the court that although Thomas accepted responsibility for whatever amount of cocaine base was in the bag, he never looked in the bag and never weighed the bag so he would not be able to admit the weight. The district court replied that it did not know how this would play out in sentencing, but seemed satisfied that if Thomas "pleaded as charged" he would at least be admitting possession of more than 50 grams.

During the plea colloquy that immediately followed, the district court informed Thomas that the indictment charged him with "knowingly and intentionally possessing with the intent to distribute a Schedule II controlled substance, to-wit: more than fifty grams of cocaine base, in violation of [21 U.S.C. § 841(a)(1) ]." The district court then asked the prosecutor to present the elements of the offense and to make a proffer as to what the government would be able to prove. The prosecutor first set forth the facts of Thomas' arrest and stated that the police laboratory had determined that the bag found in Thomas' possession contained more than 50 grams of crack cocaine. The prosecutor informed Thomas that "[t]he actual elements under 841(a)(1) are that the defendant knowingly and intentionally possessed with the intent to distribute a Schedule II controlled substance." She went on to point out, however, that the government had "further alleged in the indictment material facts which are sentencing factors under *Apprendi,* but those would include that the substance was more than fifty grams of cocaine."

After advising Thomas of the legal consequences of his guilty plea, the district court asked Thomas: "Do you disagree with the proffer made by [the prosecutor] as to what happened as to the facts of the

case?" Thomas answered: "Yes. What she said is right. But so far as me knowing, I didn't have no ability what was in there. I knew—I assumed it was something, but as far as how much it weighed or anything I knew nothing about it." This is consistent with the earlier proffer made by his counsel that Thomas would accept responsibility for whatever was in the bag, but would not be able to admit to any particular weight.

Thomas also indicated that he never knew a Schedule II controlled substance was in the bag, although he assumed that there was. At this point, the court questioned whether there was a factual basis for the plea, because Thomas was charged with knowing possession. After Thomas' counsel clarified that reckless disregard satisfies the knowledge requirement and after he elicited from Thomas an admission that he had reason to believe a controlled substance was in the bag and deliberately avoided looking in the bag to find out, the district court stated "All right. I find that is a sufficient factual basis for the plea."

Although the district court inquired into the factual basis for Thomas' knowledge that he possessed a controlled substance, the court never asked Thomas to clarify whether he did or did not admit to possessing more than 50 grams. The court was apparently satisfied that by "pleading as charged" Thomas implicitly admitted possessing more than 50 grams of cocaine base. At the sentencing hearing, the district court stressed that "the indictment in this case to which [Thomas] pled guilty charged him with possession of more than fifty grams." The court explained that it accepted a plea of guilty to the indictment, "not to some generic charge which omitted any quantity." Indeed, when Thomas' counsel pointed out that the judge was "relying upon the plea itself to establish a floor of fifty grams," the court responded "Right."

In light of the plea colloquy, it is difficult to escape the conclusion that the district court was convinced that Thomas' guilty plea necessarily admitted the factual allegations in the indictment, and it therefore did not try to elicit an admission that he possessed more than 50 grams of cocaine base.

■ The government contends, however, that Thomas implicitly admitted possessing more than 50 grams by denying knowledge of the exact quantity of the narcotics, but by failing to dispute that they exceeded 50 grams. This may be a fair reading of Thomas' statement that "as far as how much it weighed or anything I knew nothing about it." It is by no means, however, the only or even the most natural reading of it, especially in light of his counsel's earlier proffer that Thomas would admit to possessing whatever amount of cocaine base was in the bag, but could not concede that the weight exceeded 50 grams. In addition, although Thomas expressed his lack of knowledge in the past tense, he made clear that he also had no present basis for knowing the weight of the cocaine base. He stated that "[o]nce the bag fell out of my hand, I never seen it again."

The government has the burden "at the plea colloquy to seek an explicit admission of any unlawful conduct which it seeks to attribute to the defendant." *Cazares,* 121 F.3d at 1248. Moreover, "[i]n assessing the scope of the facts established beyond a reasonable doubt by a guilty plea, we must look at what the defendant actually agreed to—that is, what was actually established beyond a reasonable doubt." *United States v. Banuelos,* 322 F.3d 700, 707 (9th Cir.2003). Based on our review of the record, we conclude that Thomas did not admit to possessing more than 50 grams of cocaine base.

## II. The District Court Did Not Comply With Rule 32

■ Thomas contends that the district court erred when it failed to resolve a factual dispute about the quantity of cocaine base that he possessed and instead relied on the fact of his guilty plea to establish drug quantity. The version of Federal Rule of Criminal Procedure 32 in effect at the time of Thomas's sentencing provided in relevant part

> At the sentencing hearing, the court ... must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed.R.Crim.P. 32(c)(1) (2002).

The Ninth Circuit requires strict compliance with Rule 32. *United States v. Houston*, 217 F.3d 1204, 1207 (9th Cir.2000). In addition, a district court's findings under Rule 32(c)(1) must be explicit in order to allow for meaningful appellate review. *Id.* at 1208 (citing *United States v. Karterman*, 60 F.3d 576, 583 (9th Cir.1995)). The fact that the district court could have made the finding "is not the relevant inquiry; rather, the question is whether the trial judge *did* make such a finding in accordance with his obligation under [Rule 32(c)(1) ]." *United States v. Standard*, 207 F.3d 1136, 1140 (9th Cir.2000) (emphasis in original).

It is also well settled that when a district court does not make required Rule 32 findings at the sentencing hearing, this court will vacate the sentence and remand the case to the district court for resentencing. *Carter*, 219 F.3d at 866 (citing *United States v. Fernandez–Angulo*, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc)).

Thomas objected to the quantity of controlled substances set forth in the PSR. Specifically, he questioned whether the quantity set forth in the PSR (77.86 grams) was gross weight or net weight and requested an evidentiary hearing to examine the police criminalist who had prepared the laboratory report from which the probation officer had obtained the quantity figure. An undated addendum to the PSR indicates that the police criminalist told the probation officer that the quantity was net weight and faxed a copy of the lab report in support of this contention. The addendum notes, however, that Thomas' objection to the PSR drug quantity determination "appears to be ... unresolved."

Rather than making an explicit factual finding on this unresolved objection, the district court relied on its belief that Thomas' guilty plea encompassed the quantity allegation in the indictment. After questioning why it would need to make a finding in light of Thomas' plea, it stated "I think to the extent that a finding is requested, the finding would be that the defendant, based upon his plea of guilty, was in possession of more than fifty grams." This finding did not address Thomas' objection to the PSR. The district court therefore did not comply with the mandate of Rule 32. On remand, the district court must make an explicit factual finding to resolve any of Thomas' remaining objections to the PSR in light of our disposition.[3]

---

**3.** Because the Guidelines require a determination of drug quantity, in order to set the

sentence for conviction of an unspecified

### III. Procedure On Remand

■ Thomas' final argument is that on remand, the district court must empanel a jury to find the quantity of drugs he possessed beyond a reasonable doubt. Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. In *Buckland*, we held that "drug quantity and type, which fix the maximum sentence for a conviction ... must be charged in the indictment, submitted to the jury, ... and proved beyond a reasonable doubt." 289 F.3d at 568.

In determining whether an *Apprendi* violation has occurred, our cases have emphasized that "the proper inquiry is whether [the defendant] *was exposed* to a higher sentencing range by pleading guilty to a certain quantity of [a controlled substance] ... regardless of his actual sentence." *United States v. Villalobos*, 333 F.3d 1070, 1076 n. 7 (9th Cir.2003) (emphasis in original); *accord Minore*, 292 F.3d at 1121 n. 10; *see also Banuelos*, 322 F.3d at 705 (noting that the inquiry as to whether an *Apprendi* violation occurred is separate from whether it is harmless error); *United States v. Velasco–Heredia*, 319 F.3d 1080, 1085 (9th Cir.2003) (finding an *Apprendi*

violation even though the defendant's sentence did not exceed the statutory maximum where no drug quantity is alleged, because he was *exposed* to a higher statutory maximum); *United States v. Antonakeas*, 255 F.3d 714, 728 (9th Cir.2001) (same); *United States v. Garcia–Guizar*, 234 F.3d 483, 488 (9th Cir.2000) (same), *cert. denied*, 532 U.S. 984, 121 S.Ct. 1629, 149 L.Ed.2d 490 (2001).[4]

■ Here, in the absence of any proof of quantity, Thomas' statutory maximum sentence should have been 20 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). Although his 120–month sentence was below the statutory maximum, the finding that he possessed more than 50 grams of cocaine base exposed him to a maximum sentence of life imprisonment. *See id.* § 841(b)(1)(A). Sentencing Thomas for possession of 50 grams or more was therefore error. In addition, by requiring a mandatory minimum imprisonment of ten years, *id.*, and by increasing his base offense level under the Guidelines, *see* U.S.S.G. § 2D1.1(c) (2001), the error was clearly harmful. *See Velasco–Heredia*, 319 F.3d at 1086.

The question therefore becomes whether on remand the district court must empanel a jury to determine drug quantity beyond a reasonable doubt. As we recently held

---

quantity of cocaine base within the allowable statutory maximum, compliance with Rule 32 has not been rendered moot by our disposition of the other issues.

4. For cases that come to the opposite conclusion, see *United States v. Sua*, 307 F.3d 1150, 1154 (9th Cir.2002) (applying plain error review because the *Apprendi* issue was not raised in the district court), *cert. denied*, 537 U.S. 1221, 123 S.Ct. 1327, 154 L.Ed.2d 1078 *and* —— U.S. ——, 123 S.Ct. 1919, 155 L.Ed.2d 840 (2003); *United States v. Gill*, 280 F.3d 923, 931 (9th Cir.2002). These cases run somewhat contrary to the Supreme Court's holding in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002),

that criminal defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their *maximum* punishment." *Id.* at 589, 122 S.Ct. 2428 (emphasis added); *see also Apprendi*, 530 U.S. at 474, 120 S.Ct. 2348 (noting that the finding in Apprendi's case was "legally significant because it increased ... the maximum range within which the judge could exercise his discretion ...."); *id.* at 476, 120 S.Ct. 2348 (holding that "any fact ... that increases the *maximum penalty* for a crime must be charged in an indictment, submitted to a jury, and proven beyond reasonable doubt") (quoting *Jones v. United States*, 526 U.S. 227, 243, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (emphasis added)).

in *Banuelos*, "where [a drug quantity] finding exposes the [defendant] to a higher statutory maximum than he otherwise would face, the finding must be made by the jury, or, in the case of a guilty plea, by the court beyond a reasonable doubt." 322 F.3d at 702. Thus, rather than empaneling a jury, *Banuelos* indicates that the proper approach would have been for the district judge to determine drug quantity beyond a reasonable doubt after informing Thomas that he had the right to have a jury determine drug quantity and that he was waiving the right to have a jury do so. *Id.* at 705–06 & 706 n. 4.

In *Banuelos*, the failure to elicit an admission from the defendant regarding drug quantity could not be corrected by a drug quantity determination on remand. The court explained that

> [b]ecause Banuelos challenged only his sentence, and not his conviction, we are required to remand the case with instructions to the district court to resentence Banuelos "subject to the maximum sentence supported by the facts found by the [fact-finder] beyond a reasonable doubt." ... Banuelos admitted beyond a reasonable doubt that he conspired to distribute an unspecified amount of marijuana. Thus he was properly convicted of the general offense set forth in § 841(a)(1)—the offense charged in the indictment and the only offense for which there was a factual basis for conviction, because Banuelos did not allocute to drug quantity at the change of plea hearing or admit to drug quantity in a written plea agreement. Accordingly, the maximum permissible sentence on remand is five years in prison, pursuant to 21 U.S.C. § 841(b)(1)(D).

*Banuelos*, 322 F.3d at 706–07 (citations omitted) (quoting *United States v. Nordby*, 225 F.3d 1053, 1062 (9th Cir.2000), *overruled in part on other grounds by Buckland*, 289 F.3d at 568); *see also Velasco-*

*Heredia*, 319 F.3d at 1086–87 (remanding for resentencing for an unspecified amount of marijuana after a bench trial in which drug quantity was not proved beyond a reasonable doubt); *United States v. Jordan*, 291 F.3d 1091, 1097 (9th Cir.2002) (remanding for resentencing for an unspecified amount of methamphetamine after a jury trial in which drug quantity was not proved beyond a reasonable doubt).

Here too, Thomas admitted beyond a reasonable doubt that he knowingly possessed cocaine base with an intent to distribute. He did not, however, admit to possessing any specific quantity, nor did he knowingly waive his right under *Apprendi* and *Buckland* to have a jury determine quantity beyond a reasonable doubt. Absent a waiver of Thomas' right to a jury determination, the district judge cannot determine any particular drug quantity that would affect the maximum statutory sentence to which Thomas is exposed. *See Banuelos*, 322 F.3d at 705 n. 3. Thus, because Thomas challenged only his sentence, and not his conviction, we must remand with instructions to resentence Thomas based on an unspecified quantity of cocaine base.

## CONCLUSION

For the foregoing reasons, we vacate Thomas' sentence and remand for resentencing under 21 U.S.C. § 841(b)(1)(C).

**VACATED and REMANDED.**