**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 18 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-30005 |
| Plaintiff - Appellee, | D.C. No. 4:08-cr-00126-SEH-1 |
| v. | |
| ROBERT DARRYL WAR CLUB, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted November 1, 2010
Portland, Oregon

Before:     W. FLETCHER and FISHER, Circuit Judges, and BURY,
District Judge.[**]

Robert War Club appeals his conviction, after a four-day jury trial, for the

first-degree murder of Richard Green in violation of 18 U.S.C. §§ 1111(a), 1151,

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable David C. Bury, United States District Judge for the
District of Arizona, sitting by designation.

and 1153(a). We have jurisdiction under 28 U.S.C. § 1291. We conclude that by limiting cross-examination of Green's brother, the district court precluded War Club from developing evidence that Green's brother had a motive to commit the murder. The court thereby deprived War Club of the "meaningful opportunity to present a complete defense" guaranteed by the Constitution. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). Because we cannot say that the error was "harmless beyond a reasonable doubt," *United States v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)), we vacate the conviction and remand for a new trial.

At trial, War Club presented the theory that Richard Comes Last committed the murder at the direction of Green's brother. To support this defense theory, War Club established that Comes Last was at the scene on the morning of the murder because Green had asked him for help inflating a car tire; that Green's body was found adjacent to a portable air tank and on top of a hose connected to an air compressor; and that Comes Last knew the location of a remote control that could have been used to close the door to the garage where Green was killed. War Club also established that Comes Last did odd jobs for Green's brother, whom Comes Last regarded as his "father."

2

During his opening statement, War Club's counsel promised to complete the picture by showing that Green's brother possessed a motive for the killing: revenge. Based on a statement given by Green's brother to a law enforcement officer, War Club proposed to prove that thirty years before the murder, Green raped his brother's girlfriend; that Green's brother confronted Green with a gun about the incident; that although Green's brother subsequently married his girlfriend, the rape was a source of tension during the marriage; and finally, that two years before the murder, the marriage ended in divorce due to residual resentment over the rape. War Club tried to elicit this information during his cross-examination of Green's brother, but the district court sustained the government's objection to this line of questioning on the grounds of relevance and prejudice.

This was error. As an evidentiary matter, "[f]undamental standards of relevancy . . . require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) (quoting *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980) (Kennedy, J.)). This is so "[e]ven if the defense theory is purely speculative," because "it is the role of the jury to consider the evidence and determine whether it presents 'all kinds of fantasy possibilities' . . . or whether it presents legitimate alternative theories for how the

3

crime occurred." *United States v. Vallejo*, 237 F.3d 1008, 1023 (9th Cir. 2001). In this context, our cases have relied on Wigmore's admonition that if evidence of third-party culpability "is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create that doubt." *Id.* (quoting 1A JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 139 (Tillers rev. ed. 1983)); *Crosby*, 75 F.3d at 1349 (same).

The district court erred by deeming the evidence War Club sought to develop irrelevant and prejudicial. Although the rape occurred thirty years before the murder, the court failed to appreciate that the divorce occurred two years before the murder, and so was neither too distant nor too attenuated to form the basis for a valid alternative theory of motive. The danger of unfair prejudice was small, relative to the probative value of the proffered evidence – which was the only evidence adduced of Green's brother's motive. *See Crosby*, 75 F.3d at 1348 n.5.

As a constitutional matter, a defendant's right to present a defense – whether grounded in the Fifth Amendment's Due Process Clause or the Sixth Amendment's Compulsory Process Clause – "includes, 'at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.'" *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (quoting *Pennsylvania v. Ritchie*, 480

4

U.S. 39, 56 (1987)). We have identified violations of this right where, for example, a district court has "declared a range of defense theories off-limits, without considering in any detail the available evidence it was excluding," *id.* at 757; excluded "key corroborative evidence" for a "central" defense claim contesting the government's theory of prosecution, *Boulware*, 384 F.3d at 808-09; and excluded evidence refuting the government's theory of motive, *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir. 1985). Where, as here, a district court excludes evidence material to the defense on the basis of an erroneous evidentiary ruling, "due process concerns are still greater because the exclusion is unsupported by any legitimate state justification." *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992).

The due process violation is not limited to the exclusion of the potentially exculpatory evidence of the rape and the divorce; the court's ruling hampered other aspects of War Club's defense. For example, War Club cross-examined Comes Last about whom he phoned first after he learned that Green's body had been discovered, 911 or Green's brother. Comes Last testified at trial that he phoned 911 first, but he had previously told a law enforcement officer the opposite. War Club sought to argue that a call to Green's brother before a call to 911 was a warning from one co-conspirator to another. Without evidence of Green's brother's motive,

5

however, the jury was not equipped to grasp the significance of the order of the calls or of Comes Last's inconsistent statements. *See Lunbery v. Hornbeak*, 605 F.3d 754, 761-62 (9th Cir. 2009) (had erroneously excluded statement been admitted, "the remaining pieces of the puzzle would have become more relevant").

Having found constitutional error, we must reverse unless we are convinced that the error is harmless beyond a reasonable doubt. The government's case against War Club was circumstantial but strong – certainly strong enough to withstand a challenge to the sufficiency of the evidence. The government presented testimony that War Club was at Green's home on the morning of the murder; that War Club had unusually large amounts of cash in the days immediately after the murder; and that War Club owned the murder weapon, a red-handled butterfly knife found next to Green's body. But "[e]rror cannot be harmless where it prevents the defendant from providing an evidentiary basis for his defense," *United States v. Saenz*, 179 F.3d 686, 689 (9th Cir. 1999), or where a ruling results in the exclusion of "crucial" information that "directly contradict[s] the government's theory of the case." *Boulware*, 384 F.3d at 808. Our cases have likewise refused to hold similar error harmless in circumstantial cases. *See, e.g.*, *Stever*, 603 F.3d at 757; *Vallejo*, 237 F.3d at 1024; *Crosby*, 75 F.3d at 1347.

Moreover, in conducting our harmless error analysis, we consider only properly admitted evidence. Therefore, we do not consider hearsay statements made by Green to his wife and his brother – improperly introduced by the government over War Club's objection, as the government now concedes – in which Green expressed anxiety about War Club's repeated attempts to borrow money. War Club was incorrectly barred from developing evidence of a third party's motive while the government was incorrectly permitted to enhance its own theory of motive.

Comparing the trial that War Club actually had with the trial he should have had, we conclude that the constitutional error was not harmless beyond a reasonable doubt. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial").[1]

**REVERSED AND REMANDED**.

---

[1] Because the issue may arise at a new trial, we note that we find no error in the district court's rulings excluding the testimony and the letters of Klaus Richter, War Club's graduation photo, and War Club's door plaque.