FILED
United States Court of Appeals
Tenth Circuit

May 4, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT T. McALLISTER,

Defendant-Appellant.

No. 15-1015
(D.C. Nos. 1:13-CV-02475-PAB and
1:11-CR-00283-PAB-1)
(D. Colorado)

_____

**ORDER**
_____

Before **GORSUCH**, **MCKAY**, and **BACHARACH**, Circuit Judges.
_____

Mr. Robert McAllister was an attorney charged with conspiracy, wire fraud, and bankruptcy fraud. He and the prosecutors entered a plea agreement, stipulating to certain facts. In the plea agreement, the government agreed not to take any positions inconsistent with the stipulated facts. Based on this agreement, Mr. McAllister pleaded guilty.

At sentencing, the government recommended a stiff sentence in part because Mr. McAllister had engaged in a "crime spree" and violated court orders issued by Judge Limbaugh (a federal district judge), Judge Arguello (a federal district judge), Judge Brooks (a bankruptcy judge), and

Judge Munsinger (a state district judge). In Mr. McAllister's view, the government's argument at sentencing constituted a breach of the plea agreement and defense counsel should have objected. The district court ultimately sentenced Mr. McAllister to concurrent prison terms of 78 and 60 months.

Mr. McAllister sought vacatur of the conviction under 28 U.S.C. § 2255, and the federal district court denied relief. With this ruling, Mr. McAllister seeks to appeal on grounds that (1) the prosecutor breached the plea agreement, (2) defense counsel was ineffective in failing to object, and (3) the district court erred in imposing the sentence. To appeal, Mr. McAllister needs a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B) (2012). We decline to issue the certificate and dismiss the appeal.

## I. Standard for a Certificate of Appealability

We can issue the certificate of appealability only if Mr. McAllister has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2012). This showing has been made only if reasonable jurists could find the issue debatable. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

## II. Breach of the Plea Agreement

In urging a breach of the plea agreement, Mr. McAllister argues that the government should not have said he had engaged in a "crime spree" and violated court orders by Judges Limbaugh, Arguello, Brooks, and Munsinger. No reasonable jurist could credit these arguments.

The plea agreement expressly allowed the parties to present the district court with additional facts relevant to sentencing. Plea Agreement at 4. The only limitation was that the additional facts could not contradict the stipulated facts. *Id.* at 4-5.

Mr. McAllister stipulated that he had participated in a five-year conspiracy and a scheme to embezzle funds. The government referred to this five-year scheme as a "crime spree" and repeated some of the conclusions reached by the probation department. Government's Resp. to Def's Mot. to Stay Surrender at 2-6. The government's characterization as a "crime spree" did not conflict with any of the stipulated facts.

In the presentence report, the probation department stated that Mr. McAllister had perpetrated the scheme "to circumvent" orders issued by Judges Limbaugh, Arguello, Brooks, and Munsinger. Presentence Report at 7, ¶ 22. Mr. McAllister does not (and cannot) challenge the statements in the presentence report, for he has confined his claim to

3

prosecutorial misconduct and the probation department was not part of the prosecution.[1] Instead, Mr. McAllister alleges prosecutorial misconduct based on the government's repetition of what the probation department had said about violations of court orders.

In repeating the probation department's conclusions, the government did not mention any orders issued by Judge Brooks. Instead, the government focused on the orders by Judges Limbaugh, Arguello, and Munsinger. But, there is nothing in the plea agreement that would have prohibited the government from urging a violation of orders issued by Judges Limbaugh, Arguello, or Munsinger. *See, e.g.*, *United States v. Noriega*, 760 F.3d 908, 911 (8th Cir. 2014) (holding that the government's introduction of additional evidence at sentencing did not breach the plea agreement because there was no provision limiting the scope of relevant conduct or defining the defendant's role in the offense); *United States v. Lococo*, 511 F.3d 956, 959 (9th Cir. 2007) (per curiam) (stating that when the plea agreement reserved the right of the government to supplement the stipulated facts, its offer of additional evidence at sentencing did not

---

[1]    In *United States v. Easterling*, we held that a plea agreement cannot restrict the court's access to relevant information. 921 F.2d 1073, 1079-80 (10th Cir. 1990). We explained that even though a plea agreement might prevent the prosecutor from supplying additional information to the court, the probation officer would remain free to supply additional information within the parameters of the sentencing guidelines. *Id.* at 1080.

constitute a breach of the plea agreement), *amended*, 514 F.3d 860 (9th Cir. 2008) (per curiam).

Mr. McAllister admits he violated the "spirit" of Judge Limbaugh's orders. Sent. Tr. at 26. But Mr. McAllister complains that he did not admit intentional violation of Judge Limbaugh's orders. This complaint is invalid because Mr. Allister does not point to a conflict with a stipulated fact.

Stipulations about Judge Munsinger's order also appeared in the plea agreement. There the parties stipulated to three facts:

1.  Judge Munsinger had frozen all assets held by Mr. Terry Vickery (a client of Mr. McAllister's),

2.  Mr. Vickery had transferred $100,000 to Mr. McAllister in violation of the freeze order, and

3.  Mr. McAllister, "fully aware of this freeze order," had transferred $80,300 out of these funds to Ms. Shannon Neiswonger (a client of Mr. McAllister's).

Plea Agreement at 6-7.

In its sentencing brief, the government referred to these stipulated facts, saying:

1.  Judge Munsinger had ordered surrender of Mr. Vickery's assets,

2.  Mr. Vickery had transferred $100,000 to Mr. McAllister, and

3.  Mr. McAllister, fully aware of the freeze order, had transferred $80,300 of these funds to the Neiswongers.

5

Mr. McAllister says why he regards the government's statement as inaccurate,[2] but he does not say how it conflicts with the stipulated facts. No conflict is readily apparent, for the government's recitation appears to simply repeat the three facts stipulated in the plea agreement.

Judge Arguello's order is not mentioned in the plea agreement. But the probation department discusses this order, and the government repeated five of the probation department's conclusions about Judge Arguello's order:

---

[2] Mr. McAllister argues that the government's recitation was inaccurate because

1. Judge Munsinger's freeze order applied only to funds transferred from the partnership accounts to Mr. Vickery's wife since December 2009 (rather than to all of the Vickery assets), and

2. the $100,000 payment was for legal services and did not violate the order.

The first argument flatly contradicts the stipulations in the plea agreement. There, Mr. McAllister agreed that "[Judge] Munsinger had entered an order that all assets and interests of Vickery were to be surrendered and held in trust for the plaintiff in the action." Plea Agreement at 7. The second argument (that the $100,000 was for legal services) may be true; the government never said anything to the contrary. But Mr. McAllister admitted under oath that he had transferred the funds without Mr. Vickery's authorization or relief from the freeze order. Stipulation at 3-6, *Colorado v. McAllister*, No. 11-PDJ-48 (Colo. June 6, 2011). For these actions, Mr. McAllister admitted (again under oath) that he had violated Colorado's ethical rules for attorneys. *Id.* at 3-4, 6.

1. In 2009, the Securities and Exchange Commission had initiated an enforcement action in the District of Colorado.

2. The assigned judge, Judge Arguello, had frozen all funds raised from investors.

3. Mr. McAllister had appeared in court for all of the defendants.

4. Two days later, Judge Arguello had entered an order, continuing the freeze on all funds.

5. The same day, one of the defendants had transferred $80,000 to Mr. McAllister, who in turn transferred some of the money to his son, who in turn transferred the money to Ms. Neiswonger.

Government's Resp. in Opp'n to Def's Mot. to Stay Surrender at 5.

Mr. McAllister argues that these statements are inaccurate. But Mr. McAllister does not say how these statements conflict with anything in the plea agreement. Judge Arguello's order is not even mentioned in that document.

Without any information reflecting a conflict between the government's statements and the stipulated facts, no reasonable jurist could credit Mr. McAllister's argument involving breach of the plea agreement.

## III. Ineffective Assistance of Counsel

According to Mr. McAllister, his trial counsel was ineffective for failing to object to the government's arguments at sentencing. Again, no

reasonable jurist could debate the validity of the ineffective assistance claim.

For ineffective assistance, Mr. McAllister would need to show that his trial counsel was deficient and that this deficiency resulted in prejudice. *United States v. Cruz*, 774 F.3d 1279, 1284 (10th Cir. 2014). In considering these elements, we focus on the actions of the trial attorney and Mr. McAllister.

When the government alleged a crime spree and violation of court orders, Mr. McAllister's trial counsel contended that all of the relevant conduct was in the plea agreement. Unhappy with the attorney's argument, Mr. McAllister filed his own brief. After Mr. McAllister and his attorney objected, the district court stated that it would not consider violation of orders issued by anyone other than Judge Limbaugh.

For a claim of ineffective assistance, Mr. McAllister would need to show that his attorney should have done more and that if he had, the sentence would probably have been lighter. *See id.* And, we have already concluded that no reasonable jurist could find breach of the plea agreement. Thus, further objections by trial counsel would have been pointless. In these circumstances, no reasonable jurist could debate the validity of Mr. McAllister's ineffective assistance claim.

8

## IV.    Errors by the District Court

Mr. McAllister casts blame not only on the government and his trial counsel, but also on the district court. In Mr. McAllister's view, the district court erred by failing (1) to permit an evidentiary hearing on the allegation involving violation of court orders, (2) to recommend participation in a drug abuse program, and (3) to reassign the case to another judge. No reasonable jurist would credit any of these arguments.

### A.    Evidentiary Hearing

Mr. McAllister argues that the district court should have conducted an evidentiary hearing, where he could have disputed the government's allegation involving violation of court orders. Any reasonable jurist would regard an evidentiary hearing as unnecessary.[3]

The district court stated that it would disregard the allegation involving violation of orders by any judge other than Judge Limbaugh.[4]

---

[3]    In urging an evidentiary hearing, Mr. McAllister relies on Federal Rule of Criminal Procedure 32. But we have held that judges cannot issue a certificate of appealability on claims based on Rule 32. *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999).

[4]    Mr. McAllister questions this statement based on the sentencing court's reference to "court orders" in the plural. Appellant's Br. at 4-5. But the sentencing court never attributed these orders to Judges Arguello, Brooks, or Munsinger. In making this argument, Mr. McAllister ignores the context of the sentencing judge's statement. The sentencing judge was referring to violation of an order by Judge Limbaugh, and Mr. McAllister had admitted violation of the spirit of Judge Limbaugh's order.

Thus, Mr. McAllister ultimately obtained all he could have obtained through an evidentiary hearing: disregard of the government's allegation involving violation of orders issued by Judges Arguello, Brooks, and Munsinger. In these circumstances, we decline to issue a certificate of appealability on the denial of an evidentiary hearing.

## B. Drug Treatment Program

Mr. McAllister also complains that the district court should have recommended placement in a drug-abuse treatment program. But no reasonable jurist could credit this claim.

Courts do not determine whether an inmate can participate in a drug-abuse program. *See Tapia v. United States*, __ U.S. __, 131 S. Ct. 2382, 2390-91 (2011) (stating that the Bureau of Prisons has plenary control over placement and treatment programs for prisoners). That decision is made by the Bureau of Prisons. *Id.*

Judges can make recommendations;[5] and, for the sake of argument, we can assume that the district court should have made this recommendation for Mr. McAllister. Even with this assumption, however, the claim would fail. This claim would require proof of a statutory error resulting in a complete miscarriage of justice or an inconsistency with the

---

[5]     *Tapia*, 131 S. Ct. at 2390-91.

10

rudimentary requirements of fair procedure. *United States v. Talk*, 158 F.3d 1064, 1069 (10th Cir. 1998), *abrogated on other grounds as recognized in United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004). No reasonable jurist could regard the absence of a recommendation for drug treatment as a complete miscarriage of justice or an inconsistency with the rudimentary requirements of fair procedure.

**C.     Reassignment to a New Judge**

Finally, Mr. McAllister argues that once the sentencing judge was "tainted" by the government's improper arguments, the case should have been reassigned to a new judge. For this argument, Mr. McAllister relies on *United States v. Heredia*, 768 F.3d 1220, 1236 (9th Cir. 2014). This argument applies only if the government breached the plea agreement,[6] and we have concluded above that no reasonable jurist could find breach of the plea agreement. As a result, we decline to issue a certificate of appealability on the issue involving reassignment to another judge.

---

[6]     *Heredia*, 768 F.3d at 1236.

11

**V.     Summary**

No reasonable jurist could credit any of Mr. McAllister's proposed appellate arguments. As a result, we decline to issue a certificate of appealability and dismiss the appeal.

Entered for the Court


Robert E. Bacharach
Circuit Judge